AUSA: Getzel Berger

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 2770** |
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEFFERY MONTGOMERY,<br>DOMINICK BLYDEN,<br>ERIC SANTANA, and<br>JENKENS BOULOUTE,<br><br>Defendants. | <u>SEALED COMPLAINT</u><br><br>Violations of 18 U.S.C. §§ 371, 1343, 1349, 2313, and 2<br><br>COUNTY OF OFFENSE:<br>BRONX |

SOUTHERN DISTRICT OF NEW YORK, ss.:

RAJEEV BHATIA, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("DHS-HSI"), and charges as follows:

## COUNT ONE
### (Conspiracy to Possess and Sell Stolen Vehicles)

1. From at least in or about September 4, 2023 through at least in or about February 17, 2024, in the Southern District of New York and elsewhere, JEFFERY MONTGOMERY, DOMINICK BLYDEN, ERIC SANTANA, and JENKENS BOULOUTE, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit an offense against the United States, to wit, the receipt, possession, and sale of stolen vehicles, in violation of Title 18, United States Code, Section 2313.

2. It was a part and object of the conspiracy that JEFFERY MONTGOMERY, DOMINICK BLYDEN, ERIC SANTANA, and JENKENS BOULOUTE, the defendants, and others known and unknown, would and did intentionally and knowingly receive, possess, conceal, store, barter, sell, and dispose of stolen motor vehicles, which stolen motor vehicles had crossed a State boundary after being stolen, knowing the same to be stolen, in violation of Title 18, United States Code, Section 2313, to wit, knowing the cars to be stolen, MONTGOMERY, BLYDEN, SANTANA, and BOULOUTE agreed to and did sell multiple stolen cars in the Bronx soon after those cars had been stolen in New Jersey.

### Overt Acts

3. In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

        a.     On or about September 5, 2023, JEFFERY MONTGOMERY, the defendant, sold a stolen Honda CR-V in the Bronx, New York.

        b.     On or about September 14, 2023, ERIC SANTANA, the defendant, sold a stolen Honda CR-V in the Bronx, New York.

        c.     On or about October 23, 2023, MONTGOMERY sold a stolen Honda CR-V in the Bronx, New York.

        d.     On or about October 28, 2023, JENKENS BOULOUTE, the defendant, sold a stolen Honda Accord in the Bronx, New York.

        e.     On or about January 5, 2024, BOULOUTE sold a stolen Honda Accord in the Bronx, New York.

        f.     On or about January 10, 2024, DOMINICK BLYDEN, the defendant, sold a stolen Honda Accord in the Bronx, New York.

        g.     On or about January 14, 2024, BLYDEN sold a stolen Honda Accord in the Bronx, New York.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Sale and Receipt of Stolen Motor Vehicle)

4.     On or about September 5, 2023, JEFFERY MONTGOMERY, the defendant, did receive, possess, conceal, store, barter, sell, and dispose of a stolen motor vehicle, which stolen motor vehicle had crossed a State boundary after being stolen, knowing the same to be stolen, to wit, MONTGOMERY sold a stolen Honda CR-V in the Bronx soon after that car had been stolen in New Jersey.

(Title 18, United States Code, Sections 2313 and 2.)

## COUNT THREE
### (Sale and Receipt of Stolen Motor Vehicle)

5.     On or about January 10, 2024, DOMINICK BLYDEN, the defendant, did receive, possess, conceal, store, barter, sell, and dispose of a stolen motor vehicle, which stolen motor vehicle had crossed a State boundary after being stolen, knowing the same to be stolen, to wit, BLYDEN sold a stolen Honda Accord in the Bronx soon after that car had been stolen in New Jersey.

(Title 18, United States Code, Sections 2313 and 2.)

## COUNT FOUR
### (Sale and Receipt of Stolen Motor Vehicle)

6. On or about September 14, 2023, ERIC SANTANA, the defendant, did receive, possess, conceal, store, barter, sell, and dispose of a stolen motor vehicle, which stolen motor vehicle had crossed a State boundary after being stolen, knowing the same to be stolen, to wit, SANTANA sold a stolen Honda CR-V in the Bronx soon after that car had been stolen in New Jersey.

(Title 18, United States Code, Sections 2313 and 2.)

## COUNT FIVE
### (Sale and Receipt of Stolen Motor Vehicle)

7. On or about February 17, 2024, JENKENS BOULOUTE, the defendant, did receive, possess, conceal, store, barter, sell, and dispose of a stolen motor vehicle, which stolen motor vehicle had crossed a State boundary after being stolen, knowing the same to be stolen, to wit, BOULOUTE sold a stolen Honda Accord in the Bronx soon after that car had been stolen in New Jersey.

(Title 18, United States Code, Sections 2313 and 2.)

## COUNT SIX
### (Conspiracy to Commit Wire Fraud)

8. From at least on or about September 4, 2023 through at least on or about February 17, 2024, in the Southern District of New York and elsewhere, JEFFERY MONTGOMERY, DOMINICK BLYDEN, ERIC SANTANA, and JENKENS BOULOUTE, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

9. It was a part and an object of the conspiracy that JEFFERY MONTGOMERY, DOMINICK BLYDEN, ERIC SANTANA, and JENKENS BOULOUTE, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, MONTGOMERY, BLYDEN, SANTANA, and BOULOUTE agreed to make, and caused to be made, false statements to multiple car purchasers in order to obtain cash payments in exchange for stolen cars, and sent and received, and caused others to send and receive, Facebook messages and other electronic communications to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

(Title 18, United States Code, Section 1349.)

## COUNT SEVEN
### (Wire Fraud)

10. From at least on or about September 6, 2023 through at least on or about February 17, 2024, in the Southern District of New York and elsewhere, JEFFERY MONTGOMERY, DOMINICK BLYDEN, ERIC SANTANA, and JENKENS BOULOUTE, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, MONTGOMERY, BLYDEN, SANTANA, and BOULOUTE engaged in a scheme to make false statements to multiple car purchasers in order to fraudulently obtain cash payments in exchange for stolen vehicles, and sent and received, and caused others to send and receive, Facebook messages and other electronic communications to and from the Southern District of New York and elsewhere, in furtherance of that scheme.

The bases for my knowledge and for the foregoing charges are, in part, as follows:

### Background

11. I am a Special Agent with DHS-HSI and I have been personally involved in the investigation of this matter. My duties and responsibilities include the investigation of interstate vehicle thefts and related crimes.

12. I base this affidavit on my own personal experience and training, on my conversations with other law enforcement officials, and on my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview of the Scheme

13. Since in or about January 2024, I have been involved in an investigation into JEFFERY MONTGOMERY, DOMINICK BLYDEN, ERIC SANTANA, and JENKENS BOULOUTE, the defendants, and others known and unknown, who sold stolen cars in and around the Bronx that had been stolen out of state in and around New Jersey. By way of overview, the scheme proceeded as follows:

    a. Thieves stole cars, primarily Honda models, in New Jersey.

    b. Shortly after the thefts, the defendants obtained and downloaded Carfax vehicle history reports for the stolen cars, before those reports had been updated to reflect that the cars had been reported stolen. These Carfax vehicle reports thus indicated that the cars were not reported stolen when the defendants knew, in truth and in fact, that the cars were stolen.

4

    c.  The defendants then listed the stolen cars for sale on Facebook Marketplace. The advertisements did not indicate that the cars were stolen, as the defendants well knew. If asked for a Carfax report by unsuspecting buyers, the defendants sent the reports that had been generated before the cars had been reported as stolen.

    d.  The defendants met with prospective buyers in the Bronx and elsewhere, where they provided those buyers fake titles to the stolen cars to, among other things, conceal that the cars were stolen, as the defendants well knew. If the buyer asked to see identification, the defendants sometimes provided fake drivers licenses.

    e.  Because the defendants offered the stolen cars for sale at prices far below their market value, most of the stolen cars were sold for cash within days of their theft.

    f.  The unsuspecting buyers found out that their newly bought cars were stolen when they were apprehended by police or when they unsuccessfully tried to register the stolen cars in their name. The stolen cars were then seized by law enforcement.

    g.  When the buyers tried contacting the sellers to get their money back, they often found out that the sellers' phone numbers and Facebook accounts had been disconnected or blocked.

### The MONTGOMERY Carfax Accounts

14.  Based on my training and experience, I know that Carfax is a company that compiles information about car ownership, usage, and history. People who buy used cars often ask sellers to provide Carfax reports so that the buyer can see if the car has any hidden defects or history of accidents. Carfax reports also indicate whether the car had been reported as stolen.

15.  Based on my review of account records, I believe that JEFFERY MONTGOMERY, the defendant, used at least two Carfax accounts (together, the "MONTGOMERY Carfax Accounts"). The reasons for this belief include the following facts:

    a.  Both accounts were registered in the name "Jeffery Montgomery."

    b.  Both account users listed the same address in Manhattan as the user's place of residence. Based on my review of records provided by a telecommunications company, I know that MONTGOMERY is listed in records of that telecommunications company as living at this Manhattan address.

    c.  One of the accounts was registered using an email account that contained the phrase "mongtomeryjeffery" in the email address's username.

    d.  The other account was registered to a different email address. Based on my review of documents from an email provider, I know that the last activity for this email address was on or about January 24, 2024. Based on my participation in the investigation, I know that MONTGOMERY was arrested in New Jersey on or about January 30, 2024 and has been in custody from that date until the present.

5

16.     As explained below, the MONTGOMERY Carfax Accounts were used to run vehicle history reports on cars soon after they were stolen. Often, this occurred within hours of the thefts. Those reports did not yet reflect that the vehicles were stolen, as the defendants well knew, and were shown to prospective buyers to fraudulently induce those buyers to buy the stolen cars.

### Car-1

17.     Based on my participation in the investigation, including my review of police reports and communications with victims and other members of law enforcement, I know the following:

    a.      Car-1 is a 2020 Honda CR-V bearing the vehicle identification number 2HKRW2H55LH653657.

    b.      Car-1 was stolen in New Jersey on or about the night between September 4, 2023 and September 5, 2023. The next day, on or about September 5, 2023, Car-1 was listed for sale on Facebook Marketplace by an individual with the username "Chris Bills" and sold to another individual ("Victim-1") in Bridgeport, Connecticut, for approximately $17,500 in cash. Based on my training and experience, I know that this price is far below its approximate market value.

    c.      Victim-1 arrived to the site of the transaction accompanied by four family members and/or acquaintances. The seller was accompanied by two other individuals.

    d.      The seller showed Victim-1 a New York State driver's license bearing the name "Jeffery Montgomery" and told Victim-1 that the car was his "baby" but that he needed to sell it to buy another car.

    e.      As part of the transaction, the seller gave Victim-1 a New Jersey title in the name of "James Smith" and a copy of a Carfax report. Based on my training and experience, and based on the fact that the car had been reported stolen, I believe that the purported title was an altered or fake document.

    f.      On or about September 6, 2023, Victim-1 was stopped by police officers in Trumbull, Connecticut, on suspicion of driving a stolen vehicle, and Car-1 was seized from Victim-1.

    g.      Victim-1 thereafter tried to contact the seller of Car-1 on Facebook Marketplace, but the seller never responded.

    h.      On or about June 25, 2024, Victim-1 was shown a photo array that included a photograph of JEFFERY MONTGOMERY, the defendant. Victim-1 identified MONTGOMERY as the seller of Car-1. Additionally, each of the four family members and/or acquaintances of Victim-1 who had accompanied Victim-1 to the sale also identified MONTGOMERY as the seller of Car-1.

    i.      On or about June 25, 2024, Victim-1 was shown a photo array that included a photograph of DOMINICK BLYDEN, the defendant. Victim-1 identified BLYDEN as one of the two people who accompanied the seller of the car, *i.e.*, MONTGOMERY. Two family

members and/or acquaintances of Victim-1 who had accompanied Victim-1 to the sale also identified BLYDEN as a person who accompanied the seller of Car-1. The other two family members and/or acquaintances did not identify anyone in the photo array that included BLYDEN.

j. Based on my review of account records, I know that one of the MONTGOMERY Carfax Accounts ran a Carfax vehicle history report on Car-1 on or about the morning of September 5, 2023—*i.e.*, shortly after the car's theft and before the car's sale.

k. As detailed below with regard to Car-2, the "Chris Bills" Facebook username that was used to sell Car-1 was used later in September 2023 to advertise a stolen car sold by ERIC SANTANA, the defendant.[1]

### Car-2

18. Based on my participation in the investigation, including my review of police reports and communications with other members of law enforcement, I know the following:

a. Car-2 is a 2021 Honda CR-V that was stolen in New Jersey. Car-2 was listed for sale on Facebook Marketplace by an account with the username "Chris Bills" and sold to an individual ("Victim-2") on or about September 14, 2023 for approximately $14,000 in cash. Based on my training and experience, I know that this price is far below its approximate market value.

b. During the transaction, the seller showed Victim-2 his driver's license, which bore the name "Chris Pena." The seller also provided Victim-2 with a vehicle title made out to "Chris Pena." Victim-2 provided copies of these documents to law enforcement. Based on my training and experience, and based on the fact that the car had been reported stolen, I believe that the purported title and driver's license were altered or fake documents.

c. When Victim-2 went to register Car-2, Victim-2 found out that the car was reported stolen. Law enforcement later seized the car.

d. On or about October 7, 2023, Victim-2 was shown a photo array that included a photograph of ERIC SANTANA, the defendant. Victim-2 identified SANTANA as the man who sold Car-2 to Victim-2.

e. Based on the below comparison of (i) the photograph on the "Chris Pena" driver's license that the seller of Car-2 provided to Victim-2, and (ii) an NYPD photograph of SANTANA, I believe that SANTANA was the seller of Car-2.

---

[1] I have also reviewed NYPD reports indicating that SANTANA and BLYDEN were arrested together in a stolen BMW on or about December 9, 2022, after leading police on a high-speed chase, including on public sidewalks, that resulted in injury to a police officer and bystanders. I have also reviewed a report from the Westchester County Police Department indicating that SANTANA was identified as a man who led police on a high-speed chase from the scene of a sale of a stolen Honda Accord on or about May 23, 2024. The police terminated that chase after the vehicle entered the Hutchinson River Parkway at a high rate of speed, and SANTANA was not arrested.


Photograph on "Chris Pena" Driver's License


NYPD Photograph of SANTANA

### Car-3

19. Based on my participation in the investigation, including my review of police reports and communications with victims and other members of law enforcement, I know the following:

    a. Car-3 is a 2020 Honda CR-V bearing the vehicle identification number 2HKRW2H85LH697118.

    b. Car-3 was stolen in New Jersey on or about the night between October 19, 2023 and October 20, 2023. Within three days, by on or about October 23, 2023, Car-3 was listed for sale on Facebook Marketplace and sold to an individual ("Victim-3") in the Bronx, for approximately $14,000 in cash. Based on my training and experience, I know that this price is far below its approximate market value.

    c. Before the transaction, the seller of Car-3 sent Victim-3 a Carfax vehicle history report that did not show that the car was reported as stolen.

    d. During the transaction, the seller gave Victim-3 a New Jersey title in the name of "Pena Oliver." Based on my training and experience, and based on the fact that the car had been reported stolen, I believe that the purported title was an altered or fake document.

    e. When Victim-3 tried to register Car-3 in Victim-3's name, Victim-3 found out that it was stolen. Car-3 was later seized by law enforcement.

    f. Thereafter, Victim-3 tried to contact the seller but discovered that the seller's phone number was no longer in service.

    g. On or about June 24, 2024, Victim-3 was shown a photo array that included a photograph of JEFFERY MONTGOMERY, the defendant. Victim-1 identified MONTGOMERY as the person who sold Car-3 to Victim-3.

    h. Based on my review of Carfax account records, I know that one of the MONTGOMERY Carfax Accounts ran a Carfax vehicle history report on Car-3 on or about October 20, 2023—*i.e.*, hours after the theft and before the car's sale.

### Car-4

20. Based on my participation in the investigation, including my review of police reports and communications with victims and other members of law enforcement, I know the following:

    a. Car-4 is a 2022 Honda Accord bearing the vehicle identification number 1HGCV2F30NA006718.

    b. Car-4 was stolen in New Jersey on or about the night between October 27, 2023 and October 28, 2023. On or about October 28, 2023, Car-4 was listed for sale on Facebook Marketplace and sold to an individual ("Victim-4") in the Bronx for approximately $17,000 in cash. Based on my training and experience, I know that this price is far below its approximate market value.

    c. Before the transaction, the seller of Car-4 sent Victim-4 a Carfax vehicle history report that did not show that the car was reported as stolen.

    d. During the transaction, the seller told Victim-4 that the seller was selling the car because he moved to New Jersey with his girlfriend.

    e. During the transaction, the seller gave Victim-4 a New Jersey title in the name of "Williams John." Based on my training and experience, and based on the fact that the car had been reported stolen, I believe that the purported title was an altered or fake document.

    f. Car-4 was discovered to be stolen when Victim-4 took the car to undergo an inspection. Car-4 was then seized by law enforcement.

    g. Thereafter, Victim-4 tried to contact the seller by phone, but the seller did not answer the phone. Victim-4 tried to contact the seller by Facebook but discovered that the seller's account had been deleted.

    h. On or about June 24, 2024, Victim-4 was shown a photo array that included a photograph of JENKENS BOULOUTE, the defendant. Victim-1 identified BOULOUTE as the man who sold Car-4 to Victim-4.

    i. Based on my review of account record, I know that one of the MONTGOMERY Carfax Accounts ran a Carfax vehicle history report on Car-4 on or about October 28, 2023—*i.e.*, in between the car's theft and the car's sale.

### Car-5

21. Based on my participation in the investigation, including my review of police reports and communications with victims and other members of law enforcement, I know the following:

    a. Car-5 is a 2021 Honda Accord bearing the vehicle identification number 1HGCV2F31MA024420.

   b. Car-5 was stolen in New Jersey on or about the night between January 3, 2024 and January 4, 2024. On or about January 5, 2024, Car-5 was listed for sale on Facebook Marketplace and sold to an individual ("Victim-5") in the Bronx for approximately $18,000 in cash. Based on my training and experience, I know that this price is far below its approximate market value.

   c. During the transaction, the seller, who identified himself as "Jah Louis," told Victim-5 that he was selling the car because he needed a bigger car.

   d. Victim-5 tried to register his newly bought car and found out that it had been reported as stolen. Car-5 was then seized by law enforcement.

   e. Thereafter, Victim-5 tried to contact the seller by phone, but the account appeared to have been disconnected. Victim-5 tried to contact the seller by Facebook but discovered that the seller's account had been deleted.

   f. On or about June 12, 2024, Victim-5 was shown a photo array that included a photograph of JENKENS BOULOUTE, the defendant. Victim-5 identified BOULOUTE as the man who sold Car-5 to Victim-5.

   g. Based on my review of account records, I know that one of the MONTGOMERY Carfax Accounts ran a Carfax vehicle history report on Car-5 on or about January 4, 2024—*i.e.*, hours after the car's theft and before the car's sale.

## Car-6

  22. Based on my participation in the investigation, including my review of police reports and communications with victims and other members of law enforcement, I know the following:

   a. Car-6 is a 2020 Honda Accord bearing vehicle identification number 1HGCV2F39LA026060.

   b. Car-6 was stolen in New Jersey on or about the night between January 7, 2024 and January 8, 2024. On or about January 10, 2024, Car-6 was listed for sale on Facebook Marketplace and sold to an individual ("Victim-6") in the Bronx for approximately $12,000. Based on my training and experience, I know that this price is far below its approximate market value.

   c. Before the transaction, the seller of Car-6 sent Victim-6 a Carfax vehicle history report that did not show that the car was reported as stolen.

   d. During the transaction, the seller gave Victim-6 a New Jersey title in the name of "Oliver Pena." Based on my training and experience, and based on the fact that the car had been reported stolen, I believe that the purported title was an altered or fake document.

   e. Victim-6 paid the seller $10,000 in cash. For the remaining $2,000, the seller arranged to have Victim-6 transmit the money through Zelle. Victim-6 and Victim-6's companion each sent $1,000 to an account specified by the seller. Based on my review of financial

records, I know that the account to which the $2,000 was sent belonged to a woman ("Female-1") who, as detailed in paragraph 24(c) below, is associated with JEFFERY MONTGOMERY and DOMINICK BLYDEN, the defendants, and that, shortly after the account received the $2,000, the money was transferred to a Zelle account in the name of "Jeffery Montgomery."

       f.       The next day, on or about January 11, 2024, Victim-6 was arrested by police on suspicion of driving a stolen car. Victim-6 was later released without charge and Car-6 was seized by law enforcement.

       g.       Thereafter, Victim-6 tried to contact the seller by phone, but the account appeared to have been disconnected. Victim-6 also tried to contact the seller by Facebook but discovered that the seller's account had been deleted.

       h.       On or about July 2, 2024, Victim-6 was shown a photo array that included a photograph of BLYDEN. Victim-6 identified BLYDEN as the man who sold Car-6 to Victim-6.

       i.       Based on my review of account records, I know that one of the MONTGOMERY Carfax Accounts ran a Carfax vehicle history report on Car-6 on or about January 8, 2024—*i.e.*, hours after the car's theft and before the car's sale.

### Car-7

23.    Based on my participation in the investigation, including my review of police reports and communications with victims and other members of law enforcement, I know the following:

       a.       Car-7 is a 2020 Honda Accord bearing vehicle identification number 1HGCV2F39LA009212.

       b.       Car-7 was stolen in New Jersey on or about January 12, 2024. Within two days, on or about January 14, 2024, Car-7 was listed for sale on Facebook Marketplace and sold to an individual ("Victim-7") in the Bronx for approximately $12,500 in cash. Based on my training and experience, I know that this price is far below its approximate market value.

       c.       Before the transaction, the seller of Car-7 sent Victim-7 a Carfax vehicle history report that did not show that the car was reported as stolen.

       d.       During the transaction, the seller told Victim-7 that he was selling the car because he broke up with his romantic partner.

       e.       During the transaction, the seller showed Victim-7 a New Jersey title in the name of "Oliver Pena."

       f.       During the transaction, the seller gave Victim-7 a New Jersey title in the name of "Oliver Pena." Based on my training and experience, and based on the fact that the car had been reported stolen, I believe that the purported title was an altered or fake document.

11

    g. Within several days of the sale, Victim-7 later felt uneasy about the transaction and tried to contact the seller by phone, but the phone line appeared to have been disconnected. Victim-7 also tried to contact the seller by Facebook but discovered that the seller's account had been deleted.

    h. Victim-7 then ran a Carfax report, which indicated that the car was stolen.

    i. Victim-7 then reported the incident to the police, which seized the car.

    j. On or about June 12, 2024, Victim-7 was shown a photo array that included a photograph of DOMINICK BLYDEN, the defendant. Victim-7 identified BLYDEN as the man who sold Car-7 to Victim-7.

    k. Based on my review of Carfax account records, I know that one of the MONTGOMERY Carfax Accounts ran a Carfax vehicle history report on Car-7 on or about January 12, 2024—*i.e.*, hours after the car's theft and before the car's sale.

### Car-8 and Car-9

  24. Based on my participation in the investigation, including my review of police reports and communications with other members of law enforcement, I know the following:

    a. Car-8 is a 2023 Mercedes EQS 450 owned by a car-rental company ("Rental Company-1"). Car-8 was rented in Maryland on or about January 3, 2024 by a woman who appears to have used a stolen identity. The renter of Car-1 never returned it to Rental Company-1.

    b. In or about January 2024, after Car-8 was stolen from Rental Company-1, Car-8 was listed for sale on Facebook Marketplace. A potential buyer in New Jersey alerted the Monroe Township Police Department that Car-8 was being listed for only approximately $35,000, far below its market value. Members of law enforcement looked up the car's license plates and discovered that it is owned by a rental car company.

    c. Members of law enforcement then set up a purported purchase of Car-8 on or about January 30, 2024. Car-8 arrived to the purported sale accompanied by Car-9, a 2023 Genesis G70 which had been rented from Rental Company-1 in Connecticut but never returned. Members of law enforcement arrested the four individuals who had arrived in the two cars, which included JEFFERY MONTGOMERY and DOMINICK BLYDEN, the defendants, and Female-1—*i.e.*, the woman who facilitated a transfer of $2,000 to MONTGOMERY during the sale of Car-6 by BLYDEN.

    d. Based on my review of Carfax account records, I know that one of the MONTGOMERY Carfax Accounts ran a Carfax vehicle history report on Car-8 on or about January 28, 2024—*i.e.*, two days before the attempted sale.

### Car-10

  25. Based on my participation in the investigation, including my review of police reports and communications with other members of law enforcement, I know the following:

12

        a.    Car-10 is a 2020 Honda Accord bearing vehicle identification number 1HGCV2F9XLA020448.

        b.    Car-10 was stolen in New Jersey. On or about February 17, 2024, the owner of Car-10 searched online and discovered that Car-10 was being offered for sale on Facebook Marketplace. The owner of Car-10 pretended to be interested in purchasing Car-10 and arranged to meet with the seller. When the seller arrived, the owner of Car-10 called the police. Officers arrived at the scene and arrested the seller, who was sitting inside Car-10 and was later identified as JENKENS BOULOUTE, the defendant. Police also found keys to Car-10 in BOULOUTE's pocket.

WHEREFORE, I respectfully request that warrants be issued for the arrest of JEFFERY MONTGOMERY, DOMINICK BLYDEN, ERIC SANTANA, and JENKENS BOULOUTE, the defendants, and that they be arrested, and imprisoned or bailed, as the case may be.

/s/ Rajeev Bhatia (by GS w/ permission)
Rajeev Bhatia
Special Agent
Department of Homeland Security Homeland Security Investigations

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this 30th day of July, 2024.

_____
THE HONORABLE GARY STEIN
United States Magistrate Judge
Southern District of New York

13